# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANCISCA FALCON, as Representative of the Estate of RUBY FALCON, Deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF CHICAGO, a municipal corporation; )<br>DANIELLE DEERING (#13716); ALSIP )<br>RESTAURANT AND LOUNGE, INC. d/b/a )<br>Bar 122; and VPEN, INC. d/b/a 115 Bourbon )<br>Street, )<br>)<br>)<br>Defendants. ) | No. 17 C 5991<br>Judge Sara L. Ellis |

## OPINION AND ORDER

During the early morning of July 30, 2016, Ruby Falcon ("Ruby") was shot in the head with a bullet from the service weapon of off-duty Chicago Police Officer Defendant Danielle Deering. Francisca Falcon ("Falcon"), as the appointed representative of Ruby's estate, brings this case on behalf of Ruby's estate, alleging that Defendant City of Chicago (the "City") wrongfully caused Ruby's death by failing to adequately train and supervise Deering with respect to the proper storage and use of her service weapon while off-duty and consuming alcohol (Count II) and that the City caused a violation of Ruby's Fourteenth Amendment right by maintaining widespread customs and practices that led to a culture among Chicago Police Officers that they may carry and improperly secure their firearms while consuming alcohol off-duty without fear of consequences (Count V), in violation of 42 U.S.C. § 1983. Falcon also brings claims for wrongful death, negligence and battery against Deering, as well as claims for violations of the Illinois Dram Shop Act against the two bars at which Ruby and Deering

consumed alcohol on the night in question: Alsip Restaurant and Lounge, Inc. d/b/a Bar 122; and VPEN, Inc. d/b/a 115 Bourbon Street. The City now moves to dismiss [64] Counts II and V. Because the Court finds that Falcon did not provide a legal basis under state law for her wrongful death claim in her response to the City's arguments in favor of dismissal of Count II, the Court grants the motion to dismiss that count. But, the Court denies the motion to dismiss Count V because Falcon has adequately pleaded a widespread custom or practice claim under *Monell v. Department of Social Service of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

## BACKGROUND[1]

On July 29, 2016, Deering and Ruby spent the evening drinking at two bars, 115 Bourbon Street and Bar 122. Deering, an off-duty Chicago Police Officer, was still carrying her loaded firearm in a holster while the two were drinking at the bars. Throughout the course of the evening, Deering became intoxicated. Late on July 29 or early on July 30, the two women traveled to Deering's home in Chicago. While there, at approximately 4:20 a.m. on July 30, Deering removed her loaded firearm from its holster and placed it on the kitchen counter. At or around the same time, the firearm discharged[2] and the bullet struck Ruby in the right side of her head, killing her.

Deering and all other Chicago Police Officers are subject to Chicago Police Department general orders that require them to safely handle and secure their firearms while off-duty. Additionally, the general orders require police officers not to carry a firearm while off-duty if

---

[1] The facts in the background section are taken from Falcon's complaint and are presumed true for the purpose of resolving the motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] The SAC states in Count III that Deering "discharged her service weapon into RUBY FALCON's head without provocation." Doc. 54 ¶ 42. Because it is not clear if Falcon intends this allegation to be pleaded in the alternative to the apparent accidental discharge allegation in the "Facts Applicable to All Counts" section, and because it is not incorporated by reference into the Counts alleged against the City, the Court does not include it here as a fact underlying Counts II and V.

they are consuming alcohol. Despite these general orders, in the seven years preceding the incident in this case, at least three individuals were shot in the homes of off-duty Chicago Police Officers while those officers were intoxicated. The City was aware of these incidents at the time of the incident in this case. Falcon alleges that the Chicago Police Department's failure to supervise, discipline, or train its officers in the proper handling of firearms while intoxicated off-duty has led to a culture among Chicago Police Officers that they may carry firearms while consuming alcohol with no fear of punishment.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

## ANALYSIS

The City moves to dismiss Counts II and V of Falcon's complaint. The Court addresses them below in the same order as the parties' briefs.

## A. COUNT V: SECTION 1983 CLAIM

In Count V, Falcon alleges that the City's policies and customs resulted in Ruby's death and violated her rights to bodily integrity under the Fourteenth Amendment to the Constitution. Specifically, Falcon states that the City failed to train, discipline, and supervise its employees in the proper off-duty storage and security of service weapons and that the City failed to adequately supervise, discipline, and train its officers in the proper procedure for carrying, displaying, or using service weapons during or subsequent to the consumption of alcohol. Falcon asserts that these failures created a culture among Chicago Police Officers, including Deering, that they could carry their service weapons off-duty while they consumed alcohol without fear of consequence. Furthermore, Falcon states that the City was aware at the time of Ruby's death of three prior incidents in which citizens were shot in homes of off-duty police officers who were intoxicated.

To prove liability against the City under *Monell*, Falcon must show that (1) Ruby suffered a deprivation of a constitutional right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of her injury. *See Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005). In short, Falcon may bring a § 1983 claim against the City if she alleges a municipal policy or custom was responsible for the deprivation of Ruby's constitutional rights. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). The City now moves to dismiss Count V, arguing that Falcon has not alleged facts adequate to establish that Ruby's shooting violated her constitutional rights or that a municipal policy directly caused her death.

1.  **Constitutional Violation**

The City asserts that Count V fails to allege a constitutional violation because Deering was not acting under color of law at the time Falcon was shot and that the City does not have an obligation to protect individuals from injuries by private actors. Falcon counters that this argument misconstrues her claim, and that she is in fact asserting a claim under *Monell*, that the City's policies and customs themselves were the moving force behind the deprivation of Ruby's Fourteenth Amendment rights. Because there is no dispute that Deering was not acting under color of law at the time Ruby was shot, the Court analyzes only Falcon's theory that the City's policies and customs themselves can be the moving action behind a constitutional violation.

To succeed, the plaintiff must show that the policy itself caused the deprivation and, therefore, that the municipality is the state actor for purposes of the color of law requirement under § 1983. *Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990). Here, Falcon argues that the City's failure to adequately train its officers and its failure to adequately enforce its regulations with regard to the handling and storage of service weapons while off-duty and consuming alcohol amount to a de facto policy and custom of the City and that this policy or custom was the moving force behind Ruby's constitutional deprivation. This allegation is sufficient to state a claim against the City under *Monell* and *Gibson*.

The City argues that because Deering was off-duty at the time of the shooting, she was not acting under color of law; thus, the City cannot be liable under § 1983. However, the Seventh Circuit has already addressed and rejected this argument in *Gibson*, holding that if the City's policy was the "moving force" behind the constitutional injury, then the City itself is the state actor for purposes of § 1983 liability. *Gibson*, 910 F.2d at 1519.

The City argues, however, that the Court should not apply the *Gibson* standard to this case because doing so would expand *Gibson* in a way that is inconsistent with the Supreme Court decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). But this argument fails to account for the fact that in *Gibson* the Seventh Circuit directly addressed the relationship between its ruling and *DeShaney*, and found that while *DeShaney* held that the state has no affirmative duty to protect citizens from harm by private actors, it did not preclude liability where the state plays a part in creating a danger through its policies and practices and makes the public more vulnerable to that danger through its failure to act. *Gibson*, 910 F.2d at 1521 n.19 (7th Cir. 1990). The City also argues that the Court should follow the Ninth and Fifth Circuits, which have held that a plaintiff cannot proceed on a § 1983 claim based on a municipal policy unless the plaintiff suffered a violation of her constitutional rights at the hands of an individual acting under color of law. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835–36 (9th Cir. 1996); *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849, 869 (5th Cir. 2012).[3] The Court declines the City's invitation because these decisions are in direct conflict with the Seventh Circuit's holding in *Gibson*, and this Court's obligation is to follow that ruling.

The City's argument that *DeShaney* is the proper standard to follow here additionally fails because the Court in *DeShaney* did not address the argument Falcon has advanced here: that a municipal policy or custom caused Ruby's constitutional injury. *DeShaney* focused solely on whether the city could be held liable under § 1983 for failing to affirmatively prevent harm to an individual by a private actor. *See Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)

---

[3] The City also cites to *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) to support its contention that a municipality can only be liable for a § 1983 claim if its agent caused the constitutional harm while acting under color of law. However, the plaintiff in *Pitchell* does not appear to have alleged that a municipal policy caused his harm; therefore, it is inapposite to the present case.

("*DeShaney* and its progeny make it clear that the police have no affirmative obligation to protect citizens from drunk drivers."). Here, Falcon alleges that the City *caused* the injury, not that the City failed to prevent it. *See Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 1196978, at *15 (N.D. Ill. Mar. 31, 2017) (holding that allegations that city's de facto policies cause constitutional harm did not implicate *DeShaney*); *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *6 (N.D. Ill. Feb. 23, 2012) (same). Therefore, *DeShaney* is simply inapplicable to the § 1983 claim Falcon alleges.

The City also directs the Court to the recent Seventh Circuit decision in *Wilson-Trattner v. Campell*, 863 F.3d 589 (7th Cir. 2017), arguing that the court held there that a local government could not be liable for its policies and practices based on the actions of a government employee who was not engaging in state action at the time of the incident. However, *Wilson-Trattner* is distinguishable from the present case, and does not extend as far as the City contends. In *Wilson-Trattner*, the plaintiff brought a § 1983 claim against the Hancock County Sheriff's Department, the sheriff himself, and several sheriff's deputies, alleging that the sheriff failed to properly train his deputies in how to handle domestic violence calls, and as a result they failed to properly respond to her domestic violence calls and that this caused severe injuries and emotional distress to her. *Id.* at 591–92. The plaintiff attempted to assert a state-created danger theory under *DeShaney*. The district court granted summary judgment in favor of the defendants and the Seventh Circuit affirmed, stating that it agrees "with the district court's resolution of the Plaintiff's failure to train" claim because it "cannot proceed without evidence of an underlying constitutional violation." *Wilson-Trattner*, 863 F.3d at 596. However, the present case is not a state-created danger case under *DeShaney*, because Falcon does not allege that the City failed to protect Ruby from a constitutional harm. Rather, she argues that the City

7

affirmatively caused the harm through it policies and customs.  *Wilson-Trattner* did not address such a theory and therefore is inapplicable here.  *See Cazares*, 2017 WL 4547982, at *4 ("[T]he *Wilson-Trattner* decision neither deviates from the long line of cases applying *DeShaney* to allegations of the failure of a state actor (individual or municipal) to protect from a private harm nor alters the analysis of Plaintiffs' *Monell* claims.  *DeShaney* remains inapplicable here.").

The City also cites *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986), to argue that if there is no constitutional harm inflicted by an officer of the municipality, there can be no municipal liability.  This takes the holding of *Heller* too far.  The plaintiff in *Heller* sought damages for an alleged constitutional violation caused by an officer.  The Court held that the actions of the officer did not rise to the level of a constitutional violation, and therefore it did not reach the issue of whether the municipality could also be liable, because there was nothing for which it could be liable. The Court determined that even if the municipality had a policy authorizing the use of constitutionally excessive force, that was irrelevant because the plaintiff did not experience the use of constitutionally excessive force.  Again, here Falcon adequately alleges that Ruby suffered a constitutional violation—being shot and killed—and that the City's policies or customs caused this violation.

The City asserts that the procedural posture of *Gibson* was unusual, and that this unusualness renders it inapplicable to this case.  This argument also fails immediately.  *Gibson*'s procedural posture was unusual because the district court had granted summary judgment on municipal liability in favor of the city without allowing discovery on the municipal policy the plaintiff alleged was responsible for his injury.  The Seventh Circuit stated that this was an unusual posture because the district court essentially granted the defendant summary judgment on the municipal liability claim without allowing discovery on the theory the plaintiffs were

8

asserting. *Gibson*, 910 F.2d at 1520. The Seventh Circuit remanded the case to allow discovery on plaintiff's municipal liability theory. *Id.* at 1522. Yet, here, where no discovery has occurred on any issue, the City argues that the Court should dismiss the case. Neither the holding of *Gibson* nor its unusual procedural posture supports such a result; it in fact counsels the opposite.

Finally, in its reply, the City asserts that Falcon has not responded to several of its arguments for dismissal, resulting in waiver. The City states that Falcon ignored the City's actual arguments in her response. This argument is not well founded. The City spends numerous pages in its motion on the issue of whether Deering was acting under color of law and now says that because Falcon did not respond to this issue her whole claim should be dismissed. It is surprising that even in its reply the City continues to insist that Falcon is basing her claim against the City on some kind of vicarious liability, rather than *Monell*, as is clearly stated in Falcon's response. Furthermore, it is plain on the face of the complaint that Falcon does not contend that Deering was acting under color of law at the time of the incident. First, Falcon alleges no independent § 1983 claim against Deering, limiting her claims against Deering to state common law torts: wrongful death, battery, and negligence. Second, Falcon's claim against the City is a *Monell* claim, and the City cannot force Falcon into waiver of that claim by making inapplicable arguments that construe her claims in ways she never presented them.

The City also asserts that Falcon did not respond to its argument that every appellate court to "address whether a *Monell* policy transforms private violence into state action has squarely rejected that notion," Doc. 87 at 5, and that Falcon's interpretation of *Gibson* is at odds with these cases. The City's argument relies upon the same mischaracterization of Falcon's argument discussed in greater detail above. Falcon does not assert that the existence of the policy or custom at issue "transforms private violence into state action," but rather that the policy

9

or custom itself is the state action. The cases the City cites to support its argument that a policy or custom that causes a violation of a constitutional right alone cannot suffice to support a § 1983 claim are at odds with Seventh Circuit precedent on this point. Falcon adequately supported the basis for the argument she is actually pursuing, and therefore any failure to address the City's strawman head on does not result in waiver.

The City's final waiver argument is that Falcon did not plead facts showing that the state-created danger exception to *DeShaney* is applicable to this case. But again, Falcon is not arguing that this exception applies; she is asserting that the claim against the City should be viewed as a *Monell* claim and she supports this argument with ample case law. Thus, there is no waiver on this basis either.

For the foregoing reasons, the Court finds that Falcon has alleged that Ruby experienced a constitutional violation sufficient to state a § 1983 claim against the City.

**2. Widespread Custom or Practice**

The City next argues that Falcon has not adequately alleged the existence of a widespread custom or practice sufficient to state a *Monell* claim. There are three different ways in which a municipality can be liable for a constitutional violation under *Monell*: if the violation was caused by (1) an express policy of the municipality; (2) a common practice that is so widespread that it constitutes a custom or usage with the force of law, despite not being a written or express policy; or (3) that a person with final policy-making authority caused the harm. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Falcon's claim falls under the second type of *Monell* claim, a widespread custom or usage.

Falcon argues that the City's failure to adequately train its officers and its failure to adequately enforce it regulations with regard to the handling and storage of service weapons

10

while off-duty and consuming alcohol amount to a de facto policy and custom of the City and that this policy or custom was the moving force behind Ruby's constitutional deprivation. In support of her argument that this practice is widespread, Falcon states that over the seven years preceding Ruby's death, there were three other incidents during which someone was shot in the home of a Chicago Police Officer who was consuming alcohol while off-duty without properly storing or securing his or her service weapon.

There no "bright-line rules defining a 'widespread custom,'" but one instance, or even three instances, of similar conduct may not be sufficient to "demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. However, the Seventh Circuit has recently cautioned courts not to apply a heightened pleading standard to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). And to survive a motion to dismiss a plaintiff need not "identify every other or even one other individual who had been" subject to a constitutional violation arising from the same process. *Id.* (citing *Jackson v. Marion County*, 66 F.3d 151, 152–53 (7th Cir. 1995)).

The allegations of the complaint adequately put the City on notice of the basis for Falcon's widespread custom claim and plausibly allege that Chicago Police Officers routinely do not follow the general orders requiring proper storage and security of service weapons while off-duty and consuming alcohol. The three prior incidents Falcon alleges make it clear that the City was aware at the time of Ruby's death that this was an issue, and furthermore, the Court can reasonably infer that these other three instances are not the only times off-duty officers have failed to secure their service weapons while consuming alcohol. Therefore, Falcon has adequately alleged the existence of a widespread custom or practice sufficient to state a *Monell* claim.

11

### 3. Causation

Finally, the City argues that even if Falcon alleged a constitutional violation and a widespread custom or practice, she has not alleged a causal link between the custom or practice and the constitutional injury. The City argues that "it is just as plausible that Deering was trained on the general orders and chose on that particular night to disregard them." Doc. 87 at 13. This argument asks the Court to make a finding of fact as to why Deering did not comply with the general orders on the night of the incident. This is beyond the scope of a motion to dismiss. Falcon has plausibly alleged that Deering did not comply with the general orders because there is a widespread custom or practice at the Chicago Police Department of not enforcing those rules and that she did not fear any discipline for failing to follow the rules. At the motion to dismiss stage, the Court takes Falcon's allegations and true and draws all reasonable inference in her favor. *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. Under this standard, the City's alternative explanation does not enter the equation, no matter how plausible it also may be.

It was reasonably foreseeable that by fostering a culture in which officers carry their guns off-duty while drinking, those weapons would be improperly handled and cause serious harm or death to innocent individuals. After discovery, Falcon may ultimately be able to prove that the need to address this alleged systemic problem was so obvious and likely to result in constitutional violations that the City's failure to take remedial action was deliberately indifferent to the need to do so. *See Gibson*, 910 F.2d at 1521. Regardless, Falcon has adequately alleged a causal relationship at the motion to dismiss stage.[4]

Therefore, the Court denies the City's motion to dismiss Count V.

---

[4] The City also argues that it can only be liable for the intentional acts of its employees under *Monell*, and that because Falcon was off-duty her intentional acts cannot be ascribed to the City. In support, the City cites again to the Ninth Circuit case *Van Ort* which is in direct conflict with *Gibson*. For the same reasons stated above, the Court declines to follow *Van Ort*.

12

B.   COUNT II: WRONGFUL DEATH

In Count II, Falcon alleges that as a result of the City's willful and wanton misconduct in allowing Deering to possess her service weapon while off-duty and consuming alcohol, Ruby was shot and killed.  The City moves to dismiss this claim asserting that it is not liable for Deering's off-duty actions that are outside her scope of employment, that Falcon has not alleged that the City proximately caused Ruby's death, and that the City is immune from liability for any claim for failure to supervise, discipline, and train Deering under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/4–102.

Falcon replies that § 4–102 does not cover the type of activity she alleges the City to have engaged and that it is immaterial that Deering was not acting within the scope of her employment because Falcon is alleging that the City itself caused Ruby's death.  But, Falcon fails to address the threshold issue explaining whether a *Monell*-like claim alleging the injury was caused by a widespread custom or practice is even actionable under Illinois state law for wrongful death.  In response to a motion to dismiss, a plaintiff must identify the legal basis for a claim and make adequate legal arguments in support of it.  *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041–42 (7th Cir. 1999).  Falcon has clearly stated that she wishes to pursue this claim under the theory that a municipal policy caused Ruby's death, but she identified no state law basis to do so.  She cites only one case in her entire section on Count II, but this case, *DeSmet v. County of Rock Island*, only addresses immunity of local governments and their public employees from tort claims relating to police protection.  848 N.E.2d 1030, 1039, 219 Ill. 2d 497, 302 Ill. Dec. 466 (2006).   She makes no argument and provides no citation to any case that establishes liability

under state law for policies and practices that proximately cause an individual's death.[5]

Therefore, she has waived this argument and the Court dismisses Count II.

## CONCLUSION

For the foregoing reasons the Court grants in part and denies in part the City's motion to dismiss [64]. The Court grants the motion with respect to Count II and denies the motion with respect to Count V.

Dated: June 6, 2018

_____
SARA L. ELLIS
United States District Judge

---

[5] Even had Falcon responded to this argument, she is unlikely to have been successful. Though the Court has not located a case directly on point, Illinois courts have found that when an off-duty officer commits a tort, a municipality's hiring, training, and providing that officer with a firearm are not proximate causes of the plaintiff's injury. *Johnson v. Mers*, 664 N.E.2d 668, 673, 279 Ill. App. 3d 372, 216 Ill. Dec. 31 (1996).