UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCA FALCON, as Representative of the Estate of RUBY FALCON, Deceased<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, a municipal corporation, DANIELLE DEERING, ALSIP RESTAURANT AND LOUNGE, INC. d/b/a Bar 122, and VPEN, INC. d/b/a 115 Bourbon Street<br><br>Defendants. | Case No. 17-cv-05991<br><br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

On July 20, 2016, Chicago Police Department (CPD) probationary officer Ruby Falcon died of a gunshot wound at the home of her friend and colleague, CPD officer Danielle Deering. Francisca Falcon, Falcon's mother, as the representative of Falcon's estate, brought this seven-count action asserting a claim against the City of Chicago under 42 U.S.C. § 1983 and state law claims against the city, Deering, and two Chicago-area bars. Deering filed a motion for summary judgment on the claims against her, [141]; the bars filed motions for summary judgment on the claims against them, [116], [121]. For the reasons below, all three motions are granted.

**Background**

In resolving defendants' motions for summary judgment, the court views the evidence in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are undisputed unless otherwise noted.

On the night of July 29, 2016 (and into the early morning of July 30), Falcon, Deering, and their colleague Sherry Wagner socialized at two Chicago-area bars.

DSOF, [143] ¶ 1.[1]  The three began their evening at a bar called 115 Bourbon Street, which is owned by defendant VPEN, Inc. ("VPEN"). [143] ¶¶ 2–3. Wagner then drove the group to Bar 122, which is owned by defendant Alsip Restaurant and Lounge, Inc. ("Alsip"). [143] ¶ 3. From there, Deering and Falcon took an Uber or rideshare to retrieve Deering's car from the parking lot of 115 Bourbon Street. [143] ¶ 5. Deering then drove herself and Falcon back to Deering's home to meet up with other CPD coworkers. [143] ¶ 6.

Once Deering and Falcon arrived at Deering's home, Deering directed her coworkers to gather in the basement while she went upstairs to make up a bed and retrieve beers from the kitchen. [143] ¶¶ 9–10. While in the kitchen, Deering removed her off-duty weapon and holster and placed them on the kitchen counter. [143] ¶ 11. Deering then observed Falcon entering the room. [143] ¶ 14. Deering testified that Falcon asked where Wagner was, and that Falcon responded aggressively when Deering said Wagner was not there. [143] ¶¶ 15–16. After that, Deering says that she (Deering) saw Falcon hold Deering's gun to her (Falcon's) head and pull the trigger. [143] ¶¶ 17–19. Cory Junious—the last officer to arrive at Deering's home—heard the shot from outside the back door where he was about to enter. [143] ¶¶ 20–21. He came inside, where he saw Deering screaming and Falcon collapsed, face down, on the other side of the kitchen island. [143] ¶¶ 22–23. Responders to the scene found Deering's gun underneath Falcon's body. [143] ¶ 29.

In 2017, plaintiff filed suit in state court, and the City of Chicago removed the case to this district. [1]. In January 2018, plaintiff filed a second amended complaint alleging claims against Deering, Alsip, VPEN, and the city. [54].

The city moved to dismiss. The prior judge granted that motion in part (as to Count II, the state law wrongful death claim against the city) and denied it in part (as to Count V, the § 1983 *Monell* claim against the city). *See Falcon v. City of Chi.*, No. 17-cv-05991, 2018 WL 2716286, at *7 (N.D. Ill. June 6, 2018), abrogated in part by *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 987–90, 993 (7th Cir. 2021).

---

[1] Bracketed numbers refer to docket entries and are followed by the page or paragraph number. Page numbers refer to the CM/ECF page number. Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for Deering's Statement of Facts, [143] at 2–5; "Pl.'s Resp. DSOF" for Falcon's response to Deering's Statement of Facts, [172] at 1–7; "PSOF" for Falcon's Statement of Facts, [172] at 7–9; "Def.'s Resp. PSOF" for Deering's response to Falcon's Statement of Facts, [178]; "VSOF" for VPEN's Statement of Facts, [122]; "Pl.'s Resp. VSOF" for Falcon's response to VPEN's Statement of Facts, [130] at 1– 4; "Pl.'s SOF Re. VSOF" for Falcon's Statement of Additional Facts in response to VPEN, [130] at 4–5; "ASOF" for Alsip's Statement of Facts, [115]; and "Pl.'s SOF Re. ASOF" for Falcon's Statement of Additional Facts in response to Alsip, [132].

2

Later, Deering and the two bars (VPEN and Alsip) filed separate motions for summary judgment on the claims against each of them, all of which are state law claims. This opinion addresses those three motions.

## Discussion

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The Supreme Court instructs that Rule 56 'mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018) (quoting *Celotex*, 477 U.S. at 322). In other words, to resolve this motion for summary judgement, the court "must determine what it is that [plaintiff] would be required to prove at trial," *Austin*, 885 F.3d at 1088, and ask whether "a reasonable jury" could find that she has met her burden of proof, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law—here, Illinois state law—controls which facts the plaintiff would have to prove at trial. *Austin*, 885 F.3d at 1088.

In adjudicating a motion for summary judgment, the court gives the nonmoving party "the benefit of reasonable inferences from the evidence, . . . but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (citations omitted); *cf. Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232 (1990) ("A fundamental principle of tort law is that the plaintiff has the burden of proving by a preponderance of the evidence that the defendant caused the complained-of harm or injury; mere conjecture or speculation is insufficient proof."). "Speculation does not defeat summary judgment," *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018), and the "mere 'metaphysical possibility'" that defendant is liable "is not enough to create a material issue of fact," *Jacobs v. Univ. of Wisconsin Hosp. & Clinics Auth.*, 12 F. App'x 386, 390 (7th Cir. 2001) (quoting *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1091 (7th Cir. 2000)).

### I. Deering's Motion

Plaintiff's second amended complaint asserts three claims against Deering: wrongful death sounding in negligence (Count 1), survival sounding in battery (Count 3), and survival sounding in negligence (Count 4).[2] Deering moves for summary judgment on all three claims.

---

[2] "Wrongful-death actions are meant to compensate for the injuries suffered by [the decedent's] family, whereas the survival actions target the injuries sustained by [the decedent] herself." *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, No. 19-cv-00147, 2020

### A. Battery (Count 3)

Deering first moves for summary judgment on the battery claim against her.

Under Illinois law, battery "is an intentional tort for the unauthorized touching of the person of another." *Cunningham v. City of Chi.*, No. 17-cv-05070, 2020 WL 1503580, at *4 (N.D. Ill. Mar. 30, 2020) (citing *Fiala v. Bickford Sr. Living Grp., LLC*, 2015 IL App (2d) 150067, ¶ 20 (2015)); *see also* Restatement (Second) Torts § 18 cmt. e ("In order that the actor may be liable [for battery], it is necessary that an act be done for the purpose of bringing about a harmful or offensive contact or an apprehension of such contact to another or to a third person or with knowledge that such a result will, to a substantial certainty, be produced by his act.").

Deering argues there is no evidence from which a reasonable factfinder could determine that it is more likely than not that Deering fired the gunshot that killed Falcon. Falcon's death is a terrible tragedy, but plaintiff has not put forth any affirmative evidence that Deering pulled the trigger or otherwise committed battery. Given the summary judgment standard, the claim against Deering cannot proceed. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit.'") (citation omitted).

This plaintiff, "like all others, is entitled to try to meet [her burden] with either direct or circumstantial evidence." *Kleen Prod. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 934 (7th Cir. 2018). But the plaintiff still "need[s] to put forward evidence that would allow a trier of fact to nudge the ball over the 50-yard line and rationally to say that [liability] is more likely than not." *Id.*; *see also Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 232 (1990) ("conjecture or speculation is insufficient" to satisfy plaintiff's burden).

Meeting that burden—allowing a trier of fact to rationally say that liability is more likely than not—presents a challenge for plaintiff here because only Falcon and Deering were present in the room at the time of Falcon's death; others were in the house but not in the room. Thus, Deering is the only direct eyewitness to the event, and of course Deering is also a defendant. Nonetheless, plaintiff must meet the burden of responding to the motion with evidence that would allow a rational factfinder to conclude that it is more likely than not that Deering shot Falcon. Plaintiff has not done so. As explained below, the only available direct evidence (Deering's testimony) is that Falcon pulled the trigger (with what level of intentionality, if any, is unknown). No direct evidence supports an inference that Deering shot Falcon, and the "scintilla" of circumstantial evidence on which plaintiff

---

WL 1330660, at *3 n.4 (N.D. Ill. Mar. 22, 2020) (citing *Wyness v. Armstrong World Indus., Inc.*, 131 Ill. 2d 403, 410 (1989)).

rests her case—namely, evidence that Falcon was a generally happy person—is insufficient to allow a factfinder to draw the conclusion that Deering shot Falcon either. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

Plaintiff points to three types of evidence as the basis on which a jury could infer that Deering shot Falcon: (1) testimony of Scott Rochowicz, a forensic scientist with the Illinois State Police, (2) testimony of Dr. Golden, the medical examiner who conducted Falcon's autopsy, and (3) testimony of family members and friends of Falcon about Falcon's typical mental condition. This evidence, however, would not allow a jury to infer that Deering discharged the gun.

As to Rochowicz, the forensic scientist with the Illinois State Police, Rochowicz performed a gunshot residue analysis on samples from the hands of Falcon and Deering. Def.'s Resp. PSOF, [178] ¶ 16. Plaintiff points out, and Deering does not contest, that Rochowicz noted that there was no evidence that Falcon fired a gun, nor could he exclude the possibility that Deering fired a gun. [178] ¶ 16. But Rochowicz also testified that he could not exclude the possibility that Falcon fired the gun. [178] ¶ 16. Indeed, Rochowicz testified that both tests (on Deering and Falcon) were negative for gunshot residue. [173-1] at 44. He testified consistently that he could draw no conclusions about who was holding the gun: that there was no evidence that Deering fired the weapon, [173-1] at 44, that he did not know who was holding the firearm when it was discharged, [173-1] at 23–25, that he could not exclude the possibility that Deering fired a gun, [173-1] at 55, 58, and that he could not exclude the possibility that Falcon fired a gun, [173-1] at 56, 58. Rochowicz further testified that it is "not uncommon" for a gunshot residue test to find nothing on the hands of the shooter, in part because certain commonly used types of ammunition do not contain the heavy-metal elements analyzed in most gunshot-residue tests. *Id.* at 24, 47–48. In short, Rochowicz's analysis and testimony were wholly inconclusive. Nothing in Rochowicz's testimony suggests that Deering fired the weapon; any such inference "would be complete speculation," as Rochowicz himself testified. [173-1] at 58–59.

Plaintiff also cites testimony by Dr. Golden, the medical examiner who conducted Falcon's autopsy. Dr. Golden listed Falcon's cause of death as a gunshot wound to the head and the manner of death as "suicide" in her August 12, 2016 postmortem examination report. [143] ¶ 25; [172] ¶ 25; [173-2] at 10. Plaintiff emphasizes that Dr. Golden based her conclusions in part on the CPD's submission stating that Falcon committed suicide. [172] at 9 ¶ 18; [178] ¶ 18. At her deposition, Dr. Golden first testified that it was her opinion (based on both the CPD submission and her examination, including the nature of the wound) to a reasonable degree of medical and forensic certainty that the manner of death was suicide, [173-2] at 10–11, 17, 23, then that the evidence was consistent with homicide as well as suicide (the portion of the testimony that plaintiff emphasizes), [173-2] at 26, and then that nothing in her examination contradicted the information provided by CPD investigators, [173-2] at 27–28, and that she had not

5

reviewed any evidence to indicate that this was not a suicide, [173-2] at 29. Dr. Golden's testimony also reflects that given the nature of the wound (a "hard-contact" wound), whether a homicide or suicide, the gun would have had to have been held directly against Falcon's head. [173-2] at 11, 23, 29. Given this testimony, to find for plaintiff, a jury would need to have a basis to conclude that Deering held the gun directly to Falcon's head and fired it. While that may have been a theoretical possibility, plaintiff identifies no evidence that could support that inference. As with Rochowicz's testimony, Dr. Golden's testimony does not suggest that Deering fired the gun. A reasonable jury could not hold Deering liable for battery solely because the available physical evidence does not rule out the "metaphysical possibility" of a homicide in the abstract. *Robin*, 200 F.3d at 1091; *cf. Joyce v. JC Penney Corp.*, 389 F. App'x 529, 531 (7th Cir. 2010) ("speculation about causation will not defeat summary judgment" even where doctors are "unwilling to rule out the possibility" that defendant's actions contributed to the plaintiff's injuries).

Plaintiff also points to evidence that some family members and friends of Falcon, including Deering, had never heard Falcon express a desire to kill herself, and / or believed that Falcon was a happy person who was making plans for the future. *See* PSOF, [172] ¶¶ 8, 15, 20–21.[3] Yet plaintiff does not dispute that at the time of the incident, Falcon had a current prescription for antidepressant medication. DSOF, [143] ¶ 30; Pl.'s Resp. DSOF, [172] ¶ 30. And Falcon's prior romantic partner testified without contradiction to having previously observed Falcon holding a gun to her own head while saying that she "wanted to f***ing die," [143] ¶ 31; [143-8] at 57–60, and that Falcon had a history of depressive episodes, prescription-drug and alcohol abuse, and self-harm, [143-8] at 57–60, 76–77, 78–80. Construing all this evidence in the light most favorable to plaintiff, it suggests at most that Falcon, when in a normal mood and state of mind, was not predisposed to suicide. But the uncontradicted evidence in the record indicates that Falcon was

---

[3] Plaintiff's response brief consistently and improperly cites no sources for its factual assertions rather than citing Plaintiff's Local Rule 56.1 Statement of Additional Material Facts. *See Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section [of the supporting memorandum of law] should be to the 56.1(a) or (b) statement of facts."); *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 850 (7th Cir. 2015) ("It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to know what portion of [the record] the party is invoking so that it can . . . assess whether it is admissible and actually supports the fact or inference for which it is cited."). Nevertheless, the court, in its discretion, will credit plaintiff's assertions when it can locate support for them in any of the parties' statements of fact.

*not* in a normal state of mind in the moments leading up to her death; rather, she was intoxicated and agitated. Moreover, even if a jury believed that Falcon would not have intentionally killed herself, this does nothing to diminish the possibility that Falcon, while intoxicated, could have discharged the gun mistakenly, accidentally, or without understanding the consequences of her actions. In any event, there is no evidence in the record that would allow a jury to determine that it is more likely that Deering (intentionally or accidentally) shot Falcon than that Falcon (intentionally or accidentally) shot herself.

As mentioned above, this plaintiff, "like all others, is entitled to try to meet [her burden of proof] with either direct or circumstantial evidence." *Kleen Prod. LLC*, 910 F.3d at 934. But again, plaintiff still "need[s] to put forward evidence that would allow a trier of fact to nudge the ball over the 50-yard line and rationally to say that [liability] is more likely than not." *Id.*; *see also Smith*, 137 Ill. 2d at 232 ("conjecture or speculation is insufficient" to satisfy plaintiff's burden). Plaintiff has not met this burden. Plaintiff has not put forward evidence that would allow a rational factfinder to conclude that Deering shot Falcon. No direct evidence supports such an inference, and plaintiff does not point to circumstantial evidence that would allow a reasonable factfinder to draw this conclusion either. Plaintiff does not, for example, offer evidence suggesting that Deering had a motive to shoot Falcon, that Deering attempted to clean up or alter evidence after the fact, or that Deering's testimony that Falcon shot herself is untrustworthy. The only bit of circumstantial evidence in support of plaintiff's theory—the testimony that Falcon was generally a happy person with plans for the future—is not enough to "plausibly allow one to infer," *Kleen Prod.*, 910 F.3d at 937, that Deering killed Falcon. The motion for summary judgment is granted as to Count 3.

### B. Negligence (Counts 1 and 4)

Plaintiff also alleges in Counts 1 (wrongful death sounding in negligence) and 4 (survival sounding in negligence) that Deering's negligent and / or willful and wanton conduct caused Falcon's death.

"To state a cause of action for negligence under Illinois law, a plaintiff must establish the existence of a duty, the defendant's breach of that duty, and that the breach proximately caused the plaintiff's resulting injuries." *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018) (citing *Mt. Zion State Bank & Trust v. Consol. Commc'ns, Inc.*, 169 Ill. 2d 110, 116 (1995)).

In Illinois, there "'is no separate and independent tort of willful and wanton conduct. . . . It is regarded as an aggravated form of negligence.'" *Doe v. Bd. of Educ. of City of Chi.*, No. 19-cv-00263, 2020 WL 1445638, at *14 (N.D. Ill. Mar. 24, 2020) (quoting *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 235 (2010)); *see also Doe v. Coe*, 2019 IL 123521, ¶ 78 ("A plaintiff must allege and prove the same elements for a willful and wanton cause of action as she does for a negligence

7

action."). To "recover damages based upon a defendant's alleged negligence involving willful and wanton conduct," a plaintiff must likewise prove that the "defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin*, 238 Ill. 2d at 225.

Deering argues that summary judgment is appropriate on the negligence claims because there is no evidence in the record that (1) Deering breached a relevant duty to Falcon or (2) that any such breach proximately caused Falcon's death. Plaintiff's response brief does not respond to the first of these arguments, so any argument in response is waived. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the waiver] rule where a party fails to develop arguments related to a discrete issue."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). This alone warrants summary judgment for Deering on these claims, since duty is an element of the claims.

As to proximate cause, plaintiff again does not present any evidence that would allow a reasonable jury to find in plaintiff's favor. Plaintiff concedes that if Falcon committed suicide, Deering could not be liable for any prior negligence. *See* [174-1] at 2 n.1 (citing *Chalhoub v. Dixon*, 338 Ill. App. 3d 535, 539–40 (2003) ("It is well-established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.")). Apart from this concession, plaintiff makes no arguments regarding proximate cause, again amounting to waiver.

Given *Chaloub*'s principle that suicide severs the causal chain, plaintiff bears the burden of responding to the motion with evidence creating genuine issues both that something other than suicide occurred, and that Deering's actions proximately caused Falcon's death. Plaintiff's only evidence, as discussed above, consists of (1) opinions about Falcon's general happiness and plans for the future, (2) the fact that Rochowicz's gunshot residue analysis was inconclusive, and (3) Dr. Golden's testimony that the physical evidence did not rule out a homicide. This evidence is not enough to support a finding of proximate cause. It does not suggest either that Deering intentionally or negligently shot the gun. "[S]peculation or conjecture regarding the cause of an injury is not sufficient in Illinois to impose liability for negligence." *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). The motion for summary judgment is granted as to Counts 1 and 4 as well.

## II. Alsip's and VPEN's Motions

The lack of evidence that Deering caused Falcon's death has another implication. In Counts 6 and 7, plaintiff asserts claims against Alsip and VPEN, respectively, for violations of the Illinois Dram Shop Act. That statute provides

8

individuals injured "by any intoxicated person" a right of action "against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person." 235 ILCS 5/6-21(a). As VPEN points out, the statute also says as relevant:

> Nothing in this Act shall be construed to confer a cause of action for injuries to the person or property of the intoxicated person himself, nor shall anything in this Act be construed to confer a cause of action for loss of means of support or society on the intoxicated person himself or on any person claiming to be supported by such intoxicated person or claiming the society of such person.

*Id.* Liability is thus limited to "instances where a third person suffers damages as a result of the sale or gift of intoxicating liquors," and "dramshops are not exposed to any liability under the Dramshop Act to intoxicated patrons who suffer injuries as a result of their own intoxication." *Jodelis v. Harris*, 118 Ill. 2d 482, 487 (1987); *Matter v. Sedam*, 191 Ill. App. 3d 369, 369 (1989) (administrator of the decedent's estate barred from recovering for loss to decedent's property where the decedent was the intoxicated person).

Applying the principles above, plaintiff can recover from the bars only if (1) the bars caused Deering—as opposed to Falcon—to become intoxicated, and (2) Deering injured Falcon. On the second point, VPEN argues there is no evidence that Deering caused Falcon's death.[4] Plaintiff's response brief contains no argument to the contrary, and plaintiff's Local Rule 56.1 statements do not cite any facts in the record that could support any such argument.[5] *See* Pl.'s Resp. VSOF, [130] at 1–4; Pl.'s SOF Re. VSOF [130] at 4–5; Pl.'s SOF Re. ASOF, [132]. This alone is grounds to grant the motions for summary judgment. *Alioto*, 651 F.3d at 721; *Bonte*, 624 F.3d at 466.

Even considering the broader factual record and the facts cited in response to Deering's motion, summary judgment in favor of the bars is warranted. For the reasons discussed above, the record would not allow a reasonable factfinder to

---

[4] While Alsip's separate motion for summary judgment does not raise this argument, the point applies with equal force to both bars.

[5] Plaintiff did argue that the motion was premature and requested additional discovery. However, plaintiff subsequently filed a supplemental response brief that also does not raise any argument in response to VPEN's argument. *See* [157]. Plaintiff has now represented that the parties "have completed the depositions necessary for the resolution of Defendants Alsip Restaurant and Lounge, Inc., VPEN, Inc., and Deering's respective motions for summary judgment," and that briefing "is completed and submitted for Defendants Alsip Restaurant and Lounge, Inc.'s and VPEN, Inc.'s respective Motions for Summary Judgment." [168] at 1–2.

conclude that Deering caused Falcon's death. Accordingly, Alsip and VPEN cannot be held liable under the Illinois Dram Shop Act.

Applying Indiana's analogous dram shop law, the Seventh Circuit has affirmed summary judgment in favor of defendants where it was "pure speculation whether any injury was caused by the defendants' actions or the criminal intervention of a third party." *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015). The court reasoned that summary judgment was appropriate "because the plaintiffs carried the burden of proving that the defendants (and not other causes) were the proximate cause of any injury . . . and speculation cannot support a finding of proximate cause." *Id.* The same is true in this case. Since plaintiff has not put forward in response to the motions facts that would allow a reasonable jury to decide that Deering was the proximate cause of Falcon's death, the court grants summary judgment on the Dram Shop Act claims against Alsip and VPEN (Counts 6 and 7).[6]

## Conclusion

The motions for summary judgment by defendants Deering, Alsip, and VPEN, [116], [121], [141], are granted.

Date: March 31, 2021              /s/ Martha M. Pacold

---

[6] The court does not reach the additional arguments raised by Alsip and VPEN in support of their motions for summary judgment about whether the bars caused Deering to become intoxicated.